[Cite as *In re O.J.*, 2012-Ohio-2743.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   |                          |
|------------------------|---|--------------------------|
|                        | : | JUDGES:                  |
| IN THE MATTER OF:      | : | W. Scott Gwin, P.J.      |
|                        | : | John W. Wise, J.         |
| O.J.                   | : | Julie A. Edwards, J.     |
|                        | : |                          |
|                        | : | Case Nos. 2012AP020014 & |
|                        | : |         2012AP020015     |
|                        | : |                          |
|                        | : |                          |
|                        | : | O P I N I O N            |

CHARACTER OF PROCEEDING:        Civil Appeal from Tuscarawas County
                                Court of Common Pleas, Juvenile
                                Division, Case No. 11JN00527

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         June 13, 2012

APPEARANCES:

For Appellee Tuscarawas County          For Appellant Matthew Jenkins
Job and Family Services

DAVID HAVERFIELD                        AMANDA K. SPIES
389 – 16th Street, S.W.                 300 ½ East High Avenue
New Philadelphia, Ohio  44663           New Philadelphia, Ohio  44663

For Appellant Robyn Reichman            Guardian ad Litem

JOHN A. GARTRELL                        KAREN DUMMERMUTH
Assistant Public Defender               349 East High Avenue
153 N. Broadway                         New Philadelphia, Ohio 44663
New Philadelphia, Ohio 44663

*Edwards, J.*

{¶1} Appellants, Matthew Jenkins and Robyn Reichman, appeal from the January 17, 2012, Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division terminating their parental rights and granting permanent custody of O.J. to Tuscarawas County Job & Family Servcies.

### STATEMENT OF THE FACTS AND CASE

{¶2} O.J. (DOB 10/4/11) is the biological child of appellants Matthew Jenkins and Robyn Reichman. On October 6, 2011, Tuscarawas County Job & Family Services (TCJFS) filed a complaint alleging that O.J., who had not yet been released from the hospital, was a dependent child and seeking temporary custody, or in the alternative, permanent custody or legal custody to a relative. The complaint alleged that appellants had lost permanent custody of two other children in Case No. 10JN00034. Pursuant to a Judgment Entry filed on October 6, 2011, O.J. was placed in the temporary custody of TCJFS. O.J. was placed in foster care two days after her birth.

{¶3} An adjudicatory hearing was held on November 29, 2011. At the hearing, Jaime Grunder, a case manager with TCJFS, testified that she was involved in the case involving appellants' two other children. She testified that the previous case was initiated in January of 2010 and that the children in that case had been adopted in May of 2011. A Judgment Entry from Case No. 10JN00034 finding the children to be neglected and dependent was admitted as an exhibit. According to Grunder, the court granted permanent custody of the children in the previous case to the agency in January of 2011. Grunder, who was the caseworker on such case, testified that the agency became involved in such case over concerns about lack of stable housing and

drug use.   She further testified that both appellants had been given a case plan in the previous case that required them to complete parenting classes, maintain stable housing, undergo a psychological examination and complete drug and alcohol assessments. Appellants only completed their psychological examinations.

{¶4}    Grunder testified that while appellant Reichman exhibited periods of sobriety in the previous case, "[i]t was never long term." Transcript of November 29, 2011 hearing at 8. She testified that appellant Jenkins was never clean and usually had positive hair screens. Grunder testified that appellant Reichman told her that she only used marijuana in June of 2011 during her pregnancy with O.J. and that she had seen a positive drug screen from that use in June. At the time, appellant Reichman would have been several months pregnant.

{¶5}    At the hearing, Grunder testified that appellants had advised her that they were living apart. She testified that there was a pattern of them being together and then apart in the other case.   While the parties had a history of domestic violence, Grunder was unaware of any recent domestic violence incidents. The following is an excerpt from Grunder's testimony:

{¶6}    "Q. Okay.  Ms. Grunder, this child is how old again?

{¶7}    "A. Almost two months.

{¶8}    "Q. Does this child have any ability to protect itself from any of the circumstances you've testified about?

{¶9}    "A. No.

{¶10} "Q. You've had some involvement with Ms. Reichman since this case started, is that correct?

{¶11} "A. I've talked to her, yes.

{¶12} "Q. Okay.  She's advised you that she's been clean since June, correct?

{¶13} "A. Yes.

{¶14} "Q. You'd agree with me, that's a positive step for her?

{¶15} "A. Yes.

{¶16} "Q. Okay.  Given the history here, however, does that suggest to you that all the issues you've testified about have been resolved?

{¶17} "A. No.

{¶18} "Q. Why is that?

{¶19} "A. Well we don't know if there's domestic violence still involved with her and Matt, cause there was that in the previous case.  Um, housing, income, those are all issues for them.

{¶20} "Q. Okay, is there any involvement from Mr. Jenkins at all?

{¶21} "A. Except for the day I saw him at the hospital, I've never heard from him." Transcript of November 29, 2011 hearing at 10-11.

{¶22} On examination by the Guardian Ad Litem, Grunder testified that, with respect to the previous case appellants, starting in 2009, were living from place to place with their children. During such time, appellants were using cocaine and marijuana and spent $7,000.00 on drugs. The parties had a pattern of significant drug use and did not have stable housing in January of 2011.  Grunder also testified that appellants both disappeared at end of the previous case.  She further testified that she had never had a negative hair follicle test from appellant Jenkins who had been in jail until shortly before O.J. was born. When asked, she testified that she did not give appellants any kind of

case plan in the case sub judice. While appellant Reichman had called and asked to participate in parenting classes, she did not show up for the first class on November 15, 2011 and did not call.

{¶23} On cross-examination, Grunder testified that she did not institute a case plan in this case because the agency was not seeking reunification. This was because appellants previously had a total of three other children[1] removed. She further testified that appellant Reichman had testified positive for drugs in September of 2010 and that she had no indication that she had used cocaine since well into 2010.

{¶24} Timothy Wicks, a counselor with Personal and Family Counseling Services, testified at the hearing that appellant Reichman had been his client since mid-October of 2011. Appellant Reichman was referred to him by her obstetrician for post natal depressive symptoms. He testified that she had not missed any of her six appointments and had been cooperative. Wicks testified that appellant Reichman needed counseling to address depression and substance dependence. Wicks testified that he wanted to see appellant Reichman clean for a year in order to indicate remission. He testified that her prognosis was fair to good and that she was motivated. Prior to seeing Wicks, appellant Reichman had participated in Alcohol and Addictions.

{¶25} Wicks also testified that appellant Reichman had told him that, at one point, her cocaine use was daily and that she had sustained heavy use for a period of years. He also testified that she had told him that she had last used cocaine around tax season, so approximately six months before.

{¶26} At the November 2011 hearing, appellant Reichman testified that she had last used drugs on May 29, 2011, when she used marijuana. She testified that she had

---

[1] While two of the children were appellants, one was appellant Reichman's child by another man.

used cocaine and crack also and that she last used cocaine when she found out she was pregnant in 2011. According to appellant Reichman, she last used crack around a year prior to the hearing. She testified that she had prior counseling for drugs and alcohol during the summer of 2010, but that she did not try to succeed at that time.

{¶27} Appellant Reichman further testified that she lived with her mother and that, previously she had lived with appellant Jenkins and his grandmother. Prior to living with appellant Jenkins's grandmother, she lived at an address in Dover for a couple of months with appellant Jenkins, but moved because they could not afford it. Appellant Reichman was not employed at the time of the hearing. She testified that she did not attend the parenting class in November of 2011 due to a doctor appointment and that she planned on completing parenting classes in the future, but was unsure when the next class started. Appellant Reichman also testified that she was with appellant Jenkins and had been with him for seven years, although the two were living apart because they did not have their own place. There were two incidents of domestic violence, the last in 2010. When asked, she testified that they were still struggling financially. The following is an excerpt from her testimony:

{¶28} "Q. I see. And, Ms. Reichman, do you believe this court should return this baby to your home at this time?

{¶29} "A. At this time, no.

{¶30} "Q. Okay, but you would like the opportunity to provide, be provided case plan services?

{¶31} "A. Yes.

{¶32} "Q. And you would work on that case plan?

{¶33} "A. Yes.

{¶34} "Q. You'd do anything asked of you?

{¶35} "A. Yes.

{¶36} "Q. You'd complete parenting classes?

{¶37} "A. Yes.

{¶38} "Q. You'd complete drug and alcohol classes?

{¶39} "A. Yes." Transcript of November 29, 2011 hearing at 73.

{¶40} When asked by the court why she waited until after the agency took O.J. to begin counseling, appellant Reichman testified that she thought that she would have a chance to keep O.J. if she were clean. She admitted that she did not complete her case plan in the previous case.

{¶41} At the conclusion of the hearing, the trial court found O.J. to be a dependent child. A Judgment Entry memorializing the trial court's decision was filed on November 30, 2011. A dispositional hearing was scheduled for December 13, 2011.

{¶42} At the dispositional hearing, Grunder testified that the agency had received permanent custody of three other children in January of 2011. While two of the children were appellants', the other was appellant Reichman's child with someone else. She testified that she did a home study on appellant Reichman's sister in October of 2011 and that the home where Sarah Reichman lived was appropriate. However, Grunder testified that she did not recommend that O.J. be placed with Sarah Reichman because Sarah Reichman had allowed appellant Reichman to babysit for her 5 year old daughter several times the previous summer. Grunder was concerned that Sarah Reichman would be unable or unwilling to protect O.J. from any drug activity. Grunder

testified that Sarah Reichman had indicated that her 5 year old daughter could report if there was any drug use going on.

{¶43} Grunder also testified that appellant Reichman had failed to attend a parenting class on November 15, 2011, and had not told anyone that she was not coming. According to Grunder, this was consistent with her pattern of attendance and involvement in her last case plan. When asked, Grunder testified that a grant of permanent custody to the agency would be in O.J.'s best interest. She testified that no other relatives had come forward and requested a home study and that she had not located any other relatives.

{¶44} On cross-examination, Grunder testified that she still had concerns over domestic violence and with parenting that appellant Jenkins had never followed through with. She noted that appellant Jenkins had been charged with domestic violence and that appellant Reichman had a protection order against him. Grunder further testified that appellant Reichman had a positive drug screen for cocaine and marijuana in February of 2010, that in March of 2010, her hair follicle tested positive for cocaine although her urine was negative, and that, in April of 2010, her urine tested positive for marijuana and cocaine. On May 6, 2010, appellant Reichman had a positive urine test for cocaine and on June 9, 2010, her urine was negative. On June 14, 2010, her hair tested positive for cocaine and, on June 29, 2010, she had a negative urine. According to Grunder, on July 29, 2010, appellant Reichman's hair tested positive for cocaine and on September 13, 2010, her hair was negative. On June 14, 2011, appellant tested positive for marijuana.

{¶45} At the hearing, Sarah Reichman testified that she lived with her six year old daughter in a residence that she had been renting for two years. She testified that she was employed as an LPN and was financially able to support herself and her daughter and would be able to support another child. She stated that she had no criminal history, did not use drugs,   and had never been married. Sarah Reichman testified that she could tell if her sister was using drugs and alcohol and would not let her sister babysit if she was under the influence. She testified that she could provide O.J. with a stable home and would care for her until she was 18 years old.

{¶46} Pursuant to a Judgment Entry filed on January 17, 2011, the trial court terminated appellants' parental rights and granted permanent custody of O.J. to TCJFS. The trial court, in its Judgment Entry, found that there were no relatives appropriate for placement.

{¶47} Appellant Jenkins now appeals from the trial court's January 17, 2011 Judgment Entry, raising the following assignments of error on appeal:

{¶48} "I. THE TRIAL COURT'S JUDGMENT FINDING O.J. TO BE A DEPENDENT CHILD PURSUANT TO R.C. 2151.04(D) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶49} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO ORDER TCJFS TO IMPLEMENT A CASE PLAN PURSUANT TO R.C. 2151.412 TO REUNIFY THE FATHER WITH O.J. AFTER FINDING O.J. TO BE A DEPENDENT CHILD AND PLACING HER IN THE TEMPORARY CUSTODY TO THE TCJFS.

{¶50} "III.  THE TRIAL COURT ERRER [SIC] AS A MATTER OF LAW IN GRANTING PERMANENT CUSTODY OF O.J. TO THE TCJFS WITHOUT THE TCJFS

HAVING FILED A MOTION PURSUANT TOT R.C. 2151.413, AND THE TRIAL COURT MAKING FINDINGS BY CLEAR AND CONVINCING EVIDENCE AS REQUIRED BY R.C. 2151.414(B)(1)."

{¶51}  His case has been assigned Case No. 2010 AP 02 0014.

{¶52}  Appellant Reichman also appeals from the same Judgment Entry, raising the following assignment of error on appeal:

{¶53}  "THE TRIAL COURT'S DECISION IN FINDING O.J. TO BE DEPENDENT CHILD PURSUANT TO ORC 2151.04(D) AND THE DECISION TO TERMINATE THE APPELLANT'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PURSUANT TO R.C. 2151.414 AND ERRED IN DETERMINING THAT JOB AND FAMILY SERVICES WAS NOT REQUIRED TO EXPEND REASONABLE EFFORTS AT REUNIFICATION BEFORE GRANTING PERMANENT CUSTODY."

{¶54}  Her case has been assigned Case No. 2012 AP 02 0015.

{¶55}  For purposes of judicial economy, we shall address the two cases together.

First Assignment of Error in Case No. 2012 AP 02 0014.

{¶56}  Appellant Jenkins, in his first assignment of error, argues that the trial court's finding that O.J. was a dependent child was against the manifest weight of the evidence.  We disagree.

{¶57}  Pursuant to R.C. 2151.04, a dependent child means any child:

{¶58}  "(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

{¶59}  "(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

{¶60}  "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

{¶61}  "(D) To whom both of the following apply:

{¶62}  "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

{¶63}  "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."

{¶64}  A finding of dependency must be supported by clear and convincing evidence. Juv.R. 29(E)(4). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether

the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

{¶65} We find that the trial court's finding that O.J. was a dependent child was not against the manifest weight of the evidence. In the case sub judice, appellee, on December 1, 2011, filed a motion asking that it be relieved of the need to expend reasonable efforts to reunify O.J. with appellants. Appellee noted that appellants had had their parental rights involuntarily terminated with respect to their two other children together.

{¶66} As is stated above, there was evidence that appellants' two other children and appellant Reichman's child were placed in the agency's permanent custody in January of 2011, after the parties failed to complete their case plans in such case. The agency admitted a certified Judgment Entry from the three children from Case No. 10JN00034 finding the three children to be neglected and dependent children. In such case, issues of lack of stable housing, domestic violence, and drug usage caused the children to be removed from the home. Appellant Reichman testified that they spent $7,000.00 on drugs and admitted to using marijuana in June of 2011 while pregnant with O.J. There was evidence that, at the time of the hearing in this case, the parties lived with relatives and that while appellant Reichman requested to be included in a parenting program, she failed to show up to the first class in November of 2011 and did not follow through. In short, there was evidence that the same issues concerning housing, drug use and domestic violence that caused the children to be removed in the previous case existed in this case.

{¶67} In addition, appellant Reichman testified that she was no better off financially than she was when the children in the previous case were removed. In addition, appellant Reichman reported a domestic violence incident with appellant Jenkins in 2010, approximately one year before the instant action.

{¶68} Based on the foregoing, we find that the trial court did not err in finding O.J. to be a dependent child.

{¶69} Appellant Jenkins's' first assignment of error is, therefore, overruled.

Second Assignment of Error in Case No. 2012 AP 02 0014

{¶70} Appellant Jenkins, in his second assignment of error, argues that the trial court erred by failing to order TCJFS to implement a case plan pursuant to R.C. 2151.412 to reunify him with O.J. after finding O.J. to be a dependent child.

{¶71} As noted by appellee, appellee filed a case plan on October 31, 2011. The plan didn't seek reunification between O.J. and appellants. The plan outlined services to obtain permanency for O.J. via adoption. On December 1, 2011, appellee filed a "Motion for Hearing on Need to Expend Reasonable Efforts to Reunify." The trial court, at the December 13, 2011 hearing, specifically found that TCJFS did not need to expend reasonable efforts to reunify O.J. with appellants. The trial court, in its January 17, 2010 Judgment Entry, cited to R.C. 2151.419.

{¶72} R.C. 2151.419, provides that reasonable efforts are not necessary if the parent from whom the child was removed has had his or her parental rights involuntarily terminated with respect to a sibling of the child. Under those circumstances, the court shall make a determination the agency is not required to make reasonable efforts to

prevent the removal of the child from the child's home, eliminate the continued removal of the child from its home, or return the child to the home. R.C. 2151.419(A)(2)(e).

{¶73} Because the statute uses the word "shall", the trial court was required to make the determination reasonable efforts were unnecessary. The court had before it a certified copy of the March 31, 2010, Judgment Entry in Case No. 10JN00034 terminating appellants' parental rights to three other children.  We find, therefore, that the trial court did not err in finding that the agency did not need to expend reasonable efforts to reunify O.J. with appellants. See *In re Roberts,* 5th Dist. Nos. 2008–AP 09 0059, 2008–AP 09 0060, 2009-Ohio-247.

{¶74} Appellant Jenkins's second assignment of error is, therefore, overruled.

Third Assignment of Error in Case No. 2012 AP 02 0014

{¶75} Appellant Jenkins, in his third assignment of error, argues that the trial court erred in granting permanent custody of O.J. to TCJFS without TCJFS having filed a motion pursuant to R.C. 2151.413.

{¶76} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. § 2151.413, R.C. § 2151.27(C), and § 2151.353(A)(4). In the case sub judice, the agency requested permanent custody as part of its original complaint.

{¶77} In *In the Matter of S.F.,* 6th Dist. Nos. L-10-1177, L-10-1188, L-10-1193, 2010-Ohio-6145, the agency filed a complaint for original permanent custody of S.F. and, on the same date, was granted temporary custody of S.F.  S.F. was then placed in

the home of relatives pending further hearing.  See also *In the Matter of Hollingsworth*, 5th Dist. No. 08 CA 35, 2009-Ohio-276.   In such case, the agency was granted emergency custody of the child two days after his birth and a hearing on the original complaint requesting permanent custody was held at a later date.  Similarly, in the case sub judice, the agency filed a compaint seeking, in part, permanent custody of O.J. who was then placed in the temporary custody of the agency.

{¶78}  We find, therefore, that TCJFS was not required to file a motion for permanent custody.

{¶79}  Appellant Jenkins's third assignment of error is, therefore, overruled.

Case No.  2012 AP 02 015

{¶80}  Appellant Reichman, in her sole assignment of error, argues that the trial court's finding that O.J. was a dependent child was against the manifest weight of the evidence. She further argues that the trial court's decision to grant permanent custody of O.J. to the agency was against the manifest weight of the evidence pursuant to R.C. 2151.41 and that the trial court erred in determining that TCJFS was not required to expend reasonable efforts at reunification before granting permanent custody.

{¶81}  For the reasons set forth above in our discussion of appellant Jenkins's first and second assignments of error, we find that the trial court did not err in finding O.J. to be a dependent child and in determining that TCJFS was not required to expend reasonable efforts at reunification before granting permanent custody.

{¶82}  As is stated above, appellant Reichman also argues that the trial court's decision to grant permanent custody of O.J. to the agency was against the manifest weight of the evidence.

{¶83} "Permanent Custody" is defined as "[a] legal status that vests in a public children services agency or private child placing agency, all parental rights, duties and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151 .011.

{¶84} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985).

{¶85} In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel,* 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990). See also, *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel,* 55 Ohio St.3d at 74.

{¶86} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the

findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):

{¶87} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

{¶88} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 1997–Ohio–260, 674 N.E.2d 1159.

{¶89} Pursuant to 2152.414(B)(1), the court may grant permanent custody of a child to the movant if the court determines "that it is in the best interest of the child to grant permanent custody to the agency that filed the motion for permanent custody and that any of the following apply:

{¶90} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with the child's parents.* * *"

{¶91}  Revised Code 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with [the] parent within a reasonable time or should not be placed with [the] parent:"

{¶92}  "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problem that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.* * *

{¶93}  "(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶94} "(16) Any other factors the court considers relevant."

{¶95} A trial court may base its decision that a child cannot or should not be placed with a parent within a reasonable time upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re: William S.,* 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E .2d 738.

{¶96} Pursuant to R.C. 2151.414(D), in determining the best interest of a child, the court shall consider all relevant factors, including but not limited to the following:

{¶97} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

{¶98} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶99} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ...;

{¶100} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;* * *

{¶101} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶102} In the case sub judice, the trial court found that O.J. could not and should not be placed with either parent within a reasonable time. The trial court noted that while appellants alleged that they were serious about changing their lives, "their pattern of behavior demonstrates an initial attempt to complete services with an ultimate failure to finish them." Based on the parties' history of drug abuse, domestic violence, lack of stable housing, lack of completing case plans, financial instability and the prior termination of their parental rights, we find that the trial court did not err in making such a finding.

{¶103} We further find that the trial court did not err in finding that it was in O.J.'s best interest for permanent custody to be granted. As is stated above, the parties' other children had been removed from their home and appellants' parental rights had been involuntarily terminated with respect to such children. O.J. was placed in foster care immediately after her release from the hospital. The Guardian Ad Litem, in a report filed with the court on December 6, 2011, indicated that O.J. was bonded with her foster parents and had not visited with her parents from birth.

{¶104} There was evidence that while pregnant with O.J., appellant Reichmann had used marijuana and that around the time she became pregnant, she had used cocaine. In addition, she lacked independent housing and was financially unstable. While Sarah Reichman, appellant Reichman's sister, expressed an interest in obtaining custody of O.J., Grunder voiced concerns that she had allowed appellant Reichman, who had a serious history of drug abuse, to babysit her own young daughter. The agency did not recommend placement and there were no other relatives who expressed an interest in placement. The Guardian Ad Litem, in her December 6, 2011, report,

recommended that permanent custody be granted. The Magistrate, in her report, noted the parties' long history of drug use and abuse, their failure to complete drug and alcohol services in the past, and the fact that there was prior domestic violence. As noted by appellee, appellants had an opportunity to present clear and convincing evidence that they were able to provide suitable permanent placement for O.J., but failed to do so.

{¶105} Based on the foregoing, appellant Reichman's sole assignment of error is overruled.

{¶106} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.

By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0522

[Cite as *In re O.J.*, 2012-Ohio-2743.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                          :
                                           :
   O.J.                                    :
                                           :
                                           :
                                           :        JUDGMENT ENTRY
                                           :
                                           :
                                           :
                                           :        CASE NOS. 2012AP020014 &
                                           :                 2012AP020015


     For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to appellant.


_____

_____

_____
                    JUDGES