[Cite as *In re A.G.*, 2013-Ohio-5696.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| A.G. DEPENDENT CHILD | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 2013 AP 07 0030 |
| | : | (consolidated with 2012 AP 10 0059) |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Tuscarawas County
Court of Common Pleas, Juvenile
Division, Case No. 13JN00176

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: December 19, 2013

APPEARANCES:

For Plaintiff-Appellee: For Defendant-Appellant:

DAVID W. HAVERFIELD DAVID W. LOWRY
TUSC. CO. JOB & FAMILY SERVICES 66 S. Miller Rd. #100
389 16th St. SW Akron, OH 44333
New Philadelphia, OH 44663

*Delaney, J.*

{¶1}   Appellant Mary Gonzalez kna Pena ("Mother") hereby appeals from the September 28, 2012 and June 17, 2013 decisions of the Tuscarawas County Court of Common Pleas, Juvenile Division, granting permanent custody of her five children to appellee Tuscarawas County Job and Family Services.

## FACTS AND PROCEDURAL HISTORY

*Appellee Seeks Permanent Custody*

{¶2}   Mother has five minor children with fathers as follows: T.H.-B. and A.B. with Freddie Hannah, V.E. and S.E. with Shane Evans, and A.G. with Yobany Gonzalez.[1]   The five children initially came into appellee's custody in April 2011 when they were found to be left home alone.

{¶3}   Mother stipulated the children were neglected and dependent and was given a case plan with reunification services.   She made progress with this case plan: she attended parenting classes and individual and family counseling, and obtained medication management and a psychological evaluation.[2]   On March 23, 2012, in light of Mother's progress on the case plan, appellee filed a motion to extend temporary custody for six months, and the motion was set for hearing on April 24, 2012.

{¶4}   Prior to that hearing, however, appellee withdrew its request for extension and instead moved for permanent custody of the five children.

---

[1] None of the fathers have roles in the custody proceedings with the exception of Gonzalez, to be discussed infra.

[2] The psychological evaluation was an issue of some dispute throughout the hearings. Mother claimed she went for the evaluation and the doctor faxed it to appellee although it was never received.  Ultimately this issue is not consequential to our decision.

{¶5} Appellee has had a long history of involvement with Mother dating back to the mid-90's, but the agency's most serious concerns, and those giving rise to the motion for permanent custody, involved Mother's predilection for attachment to domestic violence offenders, to whom she also exposed her children. The following chart shows Mother's paramours and/or spouses during the time span of appellee's involvement with her parenting, and the history of domestic violence allegations:

| Paramour | Approx. Dates of Relationship | Children with Mother | D.V. Alleged/Charged? |
| --- | --- | --- | --- |
| Freddie Hannah | 1998+ | T.B.-H., A.B. | Yes |
| Shane Evans | 2000+ | V.E., S.E. | Yes, inc. against child |
| Yobany Gonzalez | 2007+ | A.G. | Sex abuse v. child(ren) |
| Ricky Rodriguez | Divorced 8/12 | None | Yes |
| Elias Pena | Married 1/13 | None | No |

{¶6} Prior to the April 24, 2012 hearing, therefore, appellee learned of yet another domestic violence allegation: Mother and Ricky Rodriguez, her then-estranged husband, were reportedly out shooting Mother's AK-47 and became embroiled in a physical confrontation which resulted in police involvement. Police seized the AK-47, Mother refused to cooperate with prosecution, and Rodriguez was charged with a number of criminal offenses including having weapons under disability.

*September 13, 2012: First Permanent Custody Proceeding*

{¶7} The motion for permanent custody was heard on September 13, 2012. None of the fathers of the children appeared at the hearing. In the case of A.G., her father, Yobany Gonzalez, had purportedly been deported to Guatemala and died there. The trial court granted permanent custody of all five children to appellee on September 28, 2012.

*Appellate History*

{¶8}   Mother's trial counsel filed a timely appeal of the September 28, 2012 entry to this Court.   We denied Mother's Motion for Extension to File Brief in accord with App.R. 11.2(C)(3), and Mother did not file a motion to file instanter.   On January 8, 2013, the appeal was dismissed for want of prosecution.   Mother's January 18, 2013 Motion for Reconsideration was denied.[3]

*Subsequent Litigation: Gonzalez Comes Forward*

{¶9}   Despite the grant of permanent custody to appellee, Mother continued to have contact with the children and disrupted their placements.   Appellee sent a letter to Mother's trial counsel advising her to stop contacting the children.   Appellee then sought and obtained a civil protection order on behalf of the children against Mother.   Mother did not appear for the hearing.

{¶10} Appellee subsequently discovered A.G.'s father Yobany Gonzalez is in fact alive and has a mailing address in Dover.   He contacted appellee through an attorney to advise he wanted contact with his child.   Appellee required him to come in and provide fingerprints to verify his identity, which he did after several months. Appellee determined Gonzalez was who he purported to be and moved to vacate the original adjudication and permanent custody finding as to A.G. only.   The trial court granted the motion.   Appellee then sought and obtained temporary custody of A.G. and filed a new complaint naming Mother and Gonzalez.

---

[3] Mother's June 11, 2013 Motion to Reconsider and/or Reopen Dismissal and Judgment Entry of February 21, 2013, Based on Ineffective Assistance of Counsel, which we granted, is discussed infra.

*May 12, 2013 and June 11, 2013:  Second Permanent Custody Proceedings*

{¶11} This matter proceeded to a full adjudicatory hearing on May 22, 2013. The trial court found A.G. to be a dependent child and scheduled the matter for a separate dispositional hearing.  Appellee requested permanent custody of A.G. at this hearing, asserting Gonzalez had abandoned her and appellee was not required to expend reasonable efforts to reunify with Mother due to the termination of her parental rights with respect to her other four children.

{¶12} The trial court agreed, finding appellee need not expend reasonable efforts to reunify with Mother.  (Gonzalez did not appear at the hearing; reportedly, he was stopped for a traffic violation shortly before the hearing date and was seized by federal immigration officials.)  After the presentation of evidence, the trial court granted appellee's motion and placed A.G. in the permanent custody of appellee.

{¶13} Mother now appeals from the June 17, 2013 decision of the trial court regarding A.G. and also moved to reopen the original appeal involving the other four children on the basis of ineffective assistance of counsel.  We granted Mother's Motion to Reconsider and/or Reopen Dismissal and Judgment Entry of February 21, 2013, Based on Ineffective Assistance of Counsel and consolidated both appeals under the instant case number.

{¶14} Mother raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶15} "I.  THE COURT ERRED IN TERMINATING APPELLANT'S PARENTAL RIGHTS AND AWARDING PERMANENT CUSTODY OF HER MINOR CHILDREN TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES AS SHE WAS DENIED THE

FUNDAMENTAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. THE ASSISTANT OF COUNSEL AFFORDED TO THIS MOTHER WAS SO DEFICIENT AND INEFFECTIVE IT PREJUDICED HER SUFFICIENTLY TO DENY THE SUBSTANTIVE AND PROCEDURAL PROTECTION THE LAW DEMANDS."

{¶16} "II. THE COURT ERRED WHEN IT RENDERED ITS DECISION TO TERMINATE THE PARENTAL RIGHTS OF THE APPELLANT AS THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE OFFERED AT THE TRIAL DID NOT ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO BE PLACED IN THE PERMANENT CUSTODY OF TUSCARAWAS COUNTY JOB AND FAMILY SERVICES."

{¶17} "III. THE COURT ERRED IN AWARDING PERMANENT CUSTODY OF THE MINOR A.G. IN THE CASE SUBJECT TO THE CIV.R. 60(B) FILING WHEN THE SOLE BASIS FOR ITS DECISION WAS EVIDENCE PRESENTED AT THE SEPTEMBER 13, 2012 HEARING WITHOUT ANY CONSIDERATION FOR THE THEN CURRENT STATUS OF THE APPELLANT. THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE SURROUNDING THE APPELLANT AT THE TIME OF THE HEARING DID NOT SUPPORT A FINDING BY CLEAR AND CONVINCING EVIDENCE."

**ANALYSIS**

I.

{¶18} In her first assignment of error, Mother argues she was deprived of the effective assistance of counsel in the first permanent custody proceeding. We disagree.

{¶19} This Court has recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., *In re Utt Children,* 5th Dist. Stark No. 2003CA00196, 2003–Ohio–4576. Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, "* * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), quoting *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). Our standard of review for an ineffective assistance claim is thus set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *In re Fell*, 5th Dist. Guernsey No. 05 CA 8, 2005-Ohio-5790, ¶ 11.

{¶20} To succeed on a claim of ineffectiveness, an appellant must satisfy a two-prong test. Initially, an appellant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶21} Even if an appellant shows that counsel was incompetent, the appellant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice"

prong, the appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test. *In re Huffman*, 5th Dist. Stark No. 2005-CA-00107, 2005-Ohio-4725, ¶ 22.

{¶22} Mother points to a number of alleged errors by trial counsel in the first permanent custody proceeding. We have reviewed those errors and find, without exception, even in the absence of these alleged errors by counsel, the result of the proceeding would not have been different. The key issue in the first proceeding was Mother's continued exposure of the children to domestic violence offenders, specifically, the fact that she and Rodriguez were involved in yet another incident even while appellee had been attempting to reunify the family. The trial court's overriding concern was Mother's inability to provide a safe environment for the children.

{¶23} We are also unwilling to find trial counsel ineffective on the basis of failure to object to hearsay testimony and leading questions and failure to make a closing argument. It would not be possible for the best-spoken counsel to change the underlying facts, much less Mother's apparent obstinacy in continued involvement with domestic violence offenders. As Mother herself acknowledges on appeal, "* * * the record is devoid of any material to establish anything other than [Mother] has used lousy judgment in her selection of men in the past." This "lousy judgment" has subjected her

children to physical abuse, and although Mother refuses to acknowledge it, apparent sexual abuse.

{¶24} Mother has therefore failed to establish the result of the proceeding would have been different but for counsel's alleged errors and her first assignment of error is overruled.

II.

{¶25} In her second assignment of error, Mother argues the trial court's decisions terminating her parental rights are against the manifest weight and sufficiency of the evidence. We disagree.

{¶26} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). In determining the best interest of a child for purposes of a permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

> (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶27} Mother contends the trial court's decision is against the manifest weight and sufficiency of the evidence while acknowledging the issue precluding return of her children is her proclivity to expose the children to domestic violence offenders and to continue relationships with domestic violence offenders. We recognize Mother had certain factors in her favor, including her progress on her case plan and the children's desire to return to her custody.

{¶28} These factors, however, do not outweigh the overwhelming evidence that Mother consistently put her relationships with dangerous men ahead of the children's well-being. The children have even been victims, at times, of domestic violence and sexual abuse at the hands of these offenders. We also note Mother minimizes the incidents and even has taken steps to avoid cooperation with prosecution of the

offenders, to her children's detriment. It also bears mention here that in addition to the exposure to domestic violence, Mother's suicide attempt, her unwillingness to take responsibility for her own choices, and her denial of the effect her choices have had on her children are also persuasive.

{¶29} We find the trial court did not abuse its discretion in finding the best interest of the children is served by granting permanent custody to appellee. Mother's second assignment of error is overruled.

III.

{¶30} In her third assignment of error, Mother argues the trial court should not have awarded custody of A.G. to appellee after the September 13, 2012 hearing because no consideration was made for Mother's status. We disagree.

{¶31} We first note the only reason the case was reopened with respect to A.G. is because appellee discovered Yobany Gonzalez was not only alive but apparently living in the area and sought contact with his daughter.

{¶32} R.C. 2151.419 provides that reasonable efforts are not necessary if the parent from whom the child was removed has had her parental rights involuntarily terminated with respect to a sibling of the child. Under those circumstances, the court shall make a determination the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from its home, or return the child to the home. R.C. 2151.419(A)(2)(e). Because the statute uses the word "shall", the trial court was required to make the determination reasonable efforts were unnecessary. In light of the trial court's decision terminating Mother's parental rights to A.G.'s siblings, it did not err in finding that the

agency did not need to expend reasonable efforts to reunify A.G. with her. *In re O.J.*, 5th Dist. Tuscarawas Nos. 2012AP020014 and 2012AP0200152012, 2012-Ohio-2743, ¶ 73, citing *In re Roberts*, 5th Dist. Tuscarawas Nos. 2008–AP 09 0059, 2008–AP 09 0060, 2009–Ohio–247.

{¶33} Under R.C. 2151.414(E)(11), the trial court found that Mother had her parental rights involuntarily terminated with respect to a sibling of the child. We further conclude Mother failed to present clear and convincing evidence that, notwithstanding the prior termination, she can provide a legally secure placement and adequate care for the health, welfare, and safety of the children.  Instead, Mother's testimony in the second hearing revealed she had contact with her children after permanent custody was granted to appellee and gave the children cell phones they weren't allowed to have, thereby exacerbating discipline and adjustment issues for some of the children. Appellee was forced to obtain a civil protection order on the children's behalf.

{¶34} We also note Mother's apparent disingenuousness.  Upon questioning by the trial court, Mother stated she never revealed Yobany Gonzalez was in fact alive, and that she was having regular contact with the mother of his other children in the area, because "no one ever asked her," despite having been questioned on this matter at the first hearing.  When asked what she would do differently, she claimed to have learned from her mistakes; we note, though, that she denied being in a relationship at the hearing on September 13, 2012, but by June 11, 2013, she was married, again, albeit to a man she says does not have a history of domestic violence.

{¶35} Mother's third assignment of error is overruled.

**CONCLUSION**

{¶36} For the foregoing reasons, Mother's three assignments of error are overruled and the judgments of the Tuscarawas County Court of Common Pleas, Juvenile Division are affirmed.

By: Delaney, J. and

Gwin, P.J.

Hoffman, J., concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN