OPINION
{¶ 1} Appellant Martha Fell appeals the decision of the Guernsey County Court of Common Pleas, Juvenile Division, which granted permanent custody of her son to Appellee Guernsey County Children Services Board ("GCCSB"). The relevant facts leading to this appeal are as follows.
 {¶ 2} The child at issue, Charles Fell, was born to Appellant Martha Fell on January 21, 2004. At that time, GCCSB filed for emergency temporary custody of the child due to concerns regarding the mental health of appellant.[1] Upon obtaining temporary custody, GCCSB placed the child in foster care with Kevin and Lori Sullivan.
 {¶ 3} On April 14, 2004, the trial court found Charles to be a dependent child. The agency maintained temporary custody of the child, and chose to continue to have the Sullivans serve as the child's foster parents. On June 10, 2004, GCCSB filed for permanent custody.
 {¶ 4} In July 2004, GCCSB discovered that there were biological relatives of the child who would be willing to adopt. GCCSB began investigating these relatives, the Ashcraft family, as a possible permanent placement for Charles. In September 2004, a new case plan was approved by the trial court. This plan provided that Charles would continue to stay with the Sullivans, but also provided that he would spend three days a week with the Ashcraft family.
 {¶ 5} On September 17, 2004, the Sullivans filed a motion for legal custody of Charles pursuant to R.C. 2151.353(A)(3), along with a motion to intervene and a motion to stay the removal of the child from their home. On November 29, 2004, the trial court ruled that the Sullivans did not have a right to intervene, and determined the remaining motions were moot. The Sullivans thereupon filed a direct appeal to this Court. On May 16, 2005, we dismissed their assignments of error as being premature. SeeIn re Fell, Guernsey App. No. 2004-CA-39, 2005-Ohio-2415 ("FellI").
 {¶ 6} In the meantime, the trial court conducted a permanent custody evidentiary hearing on January 31, 2005. Shortly before this date, GCCSB placed the child with the Ashcrafts pursuant to an updated case plan. At the permanent custody hearing, the Sullivans were permitted to argue their legal custody motion during the latter phase of the hearing. On February 14, 2005, the trial court issued a judgment entry granting permanent custody of Charles to GCCSB.
 {¶ 7} Appellant filed a notice of appeal on March 9, 2005, and herein raises the following sole Assignment of Error:
 {¶ 8} "I. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER COUNSEL FAILED TO OBJECT TO THE INTRODUCTION OF CERTAIN TESTIMONY ON GROUND OF PSYCHOLOGIST-PATIENT OR PHYSICIAN-PATIENT PRIVILEGE.
 I. {¶ 9} In her sole Assignment of Error, appellant contends she was deprived of the effective assistance of trial counsel by the failure of her attorney to object to certain testimony on the basis of psychologist-patient or physician-patient privilege. We disagree.
 {¶ 10} "Where the proceeding contemplates the loss of parents' `essential' and `basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." In re Wingo (2001), 143 Ohio App.3d 652, 666,758 N.E.2d 780, quoting In re Heston (1998), 129 Ohio App.3d 825,827, 719 N.E.2d 93. This Court has recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., Inre Utt Children, Stark App. No. 2003CA00196, 2003-Ohio-4576.
 {¶ 11} Our standard of review for an ineffective assistance claim is thus set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the proceeding is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance. Bradley at 142, 538 N.E.2d 373.
 {¶ 12} In the case sub judice, David J. Tennenbaum, Ph.D., testified regarding his psychological evaluation of appellant. Tr. at 16-41. He further submitted a written report, which includes the following assessment:
 {¶ 13} "As only an initial diagnostic impression can be suggested, at the least there would appear a mood disorder, probably a Bipolar I Disorder. Given the acknowledged history of multiple psychiatric admissions; Martha's behavioral acting-out, impulsivity, and rapid escalation of anger, there appear one or more personality disorders, my limited experience with Martha today suggesting histrionic, antisocial, and paranoid features. Overall, the impression though is of Borderline Personality Disorder as the primary working diagnosis.
 {¶ 14} "There should be great caution in any consideration of placing any child with Martha if her appearance today typifies behaviors that may have been seen over time and to which a small child would be subjected. At this point, although she threatens not to take medications, suggesting that this is a way to `get back at' the agency, for stabilizing mood a neuroleptic might assist. The more overriding concern is the suspected combination of personality disorders. Martha is unlikely to show significant change. Prognosis is poor." GCCSB Exhibit A, at p. 5.
 {¶ 15} We note that effective April 10, 2001, the General Assembly enacted House Bill 506, which amended R.C. 2317.02(B)(1) to permit the testimony of providers of treatment or services ordered as a part of the case plan journalized under R.C.2151.412. In re Buford (May 17, 2001), Cuyahoga App. No. 78214. In addition, R.C. 4732.19 provides that "confidential communications between a licensed psychologist * * * and client are placed upon the same basis as those between physician and patient under division (B) of section 2317.02 of the Revised Code."
 {¶ 16} Appellant recognizes the modern exceptions to psychologist-patient or physician-patient privilege in dependency, neglect, and abuse cases, but argues that trial counsel should have at least objected to Dr. Tennenbaum's testimony as to appellant's case history vis-á-vis his personal observations of appellant. However, in light of the aforecited statutes, we are unpersuaded that trial counsel's performance fell below an objective standard of reasonable representation and was violative of any essential duties to the client under the facts and circumstances of this case.
 {¶ 17} Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 18} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is hereby affirmed.
Wise, J. Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is affirmed.
Costs to Appellant Martha Fell.
[1] Since the time of birth, Charles's father, Jeff Stevens, has chosen not to be a part of his son's life.