[Cite as *In re C.B.*, 2019-Ohio-2784.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   |                              |
|------------------------|---|------------------------------|
|                        | : | JUDGES:                      |
| IN RE: C.B.            | : | Hon. W. Scott Gwin, P.J.     |
|                        | : | Hon. William B. Hoffman, J.  |
|                        | : | Hon. Earle E. Wise, J.       |
|                        | : |                              |
|                        | : |                              |
|                        | : |                              |
|                        | : | Case No. 19CA4               |
|                        | : |                              |
|                        | : |                              |
|                        | : |                              |
|                        | : | <u>OPINION</u>               |


CHARACTER OF PROCEEDING:      Civil appeal from  the Richland County
                              Court of Common Pleas, Juvenile Division,
                              Case No. 2016-DEP-82


JUDGMENT:                     Affirmed


DATE OF JUDGMENT ENTRY:       July 8,  2019


APPEARANCES:

For Richland County Children's Services      For Father - Appellant

EDITH GILLILAND                              DARIN AVERY
Richland County Children Services            105 Sturges Avenue
731 Scholl Road                              Mansfield, OH 44903
Mansfield, OH 44907

*Gwin, P.J.*

{¶1} Appellant C.B. Jr. appeals from the January 17, 2019 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, overruling his objections to the magistrate's decision, terminating his parental rights, and granting permanent custody of C.B. to the Richland County Children Services Board ("RCCSB").

*Facts & Procedural History*

{¶2} C.B. Jr. is the father of C.B., born July 13, 2012. D.C. is the mother of C.B. C.B. has two biological siblings. On September 8, 2016, RCCSB filed a complaint of dependency with regard to C.B. The complaint alleged, in part, that Mother has three active warrants for her arrest for child endangerment, has left the state, and has no contact with her children. Further, that Father is charged with aggravated trafficking, possession, and paraphernalia, has not maintained contact with his children or RCCSB, and C.B. observed Father selling drugs. The trial court appointed Dawn Fesmier Pigg as guardian ad litem ("GAL") for C.B. on September 19, 2016.

{¶3} On September 28, 2016, the magistrate held a dispositional hearing. Father stipulated to a finding of dependency. The trial court found C.B. to be dependent and placed him into the temporary custody of RCCSB with a protective supervision order. The trial court found RCCSB engaged in reasonable efforts to prevent the continued removal of the child from his home and found those efforts have been unsuccessful given Father's felony conviction, Father's ensuing incarceration, and Mother's whereabouts being unknown.

{¶4} On December 2, 2016, the magistrate held a further dispositional hearing. The magistrate found, by clear and convincing evidence, that C.B. is dependent as to

Mother and Father and temporary custody to RCCSB is in the best interest of C.B. due to Father's lack of participation with the case plan, his current incarceration, and Mother's abandonment of the children and unwillingness to return to Ohio. The magistrate found RCCSB made reasonable efforts to prevent placement. On January 26, 2017, the trial court adopted and approved the case plan. The magistrate held ninety-day review hearings in February of 2017 and June of 2017, and found it was in C.B.'s best interest to remain in the temporary custody of RCCSB.

{¶5} On August 11, 2017, RCCSB filed a motion seeking permanent custody of C.B. The trial court dismissed the motion for permanent custody after RCCSB filed a motion to extend temporary custody. On January 4, 2018, the magistrate found it was in C.B.'s best interest to extend temporary custody for six months. Mother filed a motion for visitation on January 16, 2018. RCCSB filed a motion for permanent custody on February 20, 2018. On June 14, 2018, Father filed a motion for visitation.

{¶6} The GAL filed a report on July 18, 2018. The GAL stated Father was released from prison and called her approximately 30 days after his release to schedule an office conference. During the office conference, Father informed the GAL he was staying at a local homeless shelter and mentioned relocating to Cleveland. While Father told the GAL he completed several programs while incarcerated, he did not sign the requested releases for the GAL to obtain verification of completion of these programs. The GAL had not heard back from Father as to his progress. The GAL stated C.B.is doing well in school and successfully completed preschool. The GAL stated that while there are a number of children in the foster home, the foster family is clearly bonded to the children and the children to them. The foster parents have encouraged a relationship

with the maternal great-grandmother of the children. The GAL recommended permanent custody of C.B. be given to RCCSB, as the GAL has never met Mother and because Father is not in a position to care for the children. Further, that case plan compliance cannot be confirmed for either parent.

{¶7} The magistrate conducted a trial on RCCSB's motion for permanent custody and Father's motion for visitation on July 18, 2018.

{¶8} Charlotte Wancha ("Wancha") is the child's maternal great-grandmother. She has known the children ever since they were born and is familiar with the parents. Wancha testified the children did not get the proper care, as the house was dirty, the children were dirty, and there was not enough food for the children. Wancha tried to bring food and help them. The children were present in the home when Wancha smelled marijuana in the home. Wancha still maintains contact with the children and testified they are really well behaved and are a lot better than they were.

{¶9} Father testified he completed a mental health risk assessment done by the psychological department within the Lorain Correctional Institution and also completed a drug and alcohol abuse assessment by Recovery Services while in prison. Father completed several programs in prison with regards to anger and stress management. Father stated he has made mistakes, but loves his children and would do anything for them. Father believes if he is given 90 to 180 days, he could be financially stable and get his children back.

{¶10} Father testified he is living at a homeless shelter. After he leaves there, Father intends to move to Cleveland where he would sleep at a business for thirty to sixty days until he has enough money to get a house. Father and Mother are still married.

Father is trying to get Mother into rehab now and still loves her. Father video chats with Mother several times per week and Mother currently uses heroin, methamphetamine, and cocaine. Mother told Father she gets money for drugs from prostitution. Father does not believe Mother is an appropriate parent to the children. Mother made allegations of domestic violence against him. Father originally was charged with two counts of aggravated drug trafficking and one count of possession. Father pled guilty to possession, a third degree felony, and was sentenced to two years in prison. After Father's arrest, the children did not return to him. Father admitted that prior to his incarceration, he did not do any of the voluntary case plan items.

{¶11} Father believes it is in the best interest of the children to be returned to his custody because he wants his children to know he is always going to be there for them. Father testified he made some mistakes, but he was going through depression and anxiety because his wife left him, he could not pay his bills, and since he could not afford to feed his children, he had to sell drugs.

{¶12} Father stated he went to see the GAL thirty days after he was released from prison. Father testified he attempted to call to make appointments, but did not leave a message. On cross-examination, Father stated he did not currently have a house to go home to, does not have a job or income to provide for his children, and has not completed his case plan.

{¶13} Alexandra Hokans ("Hokans") is an intake caseworker at RCCSB. Hokans first investigated the family in 2014 when there were concerns of drugs use, poor home conditions, lack of supervision of the children, and domestic violence between Mother and Father. In 2014, she did not have enough to proceed past a voluntary investigation,

so the case was closed. In 2015, Hokans again investigated the family for concerns of drug use, lack of supervision, and poor home conditions. That case was also closed. In August of 2015, there was a neglect report filed with concerns of lack of supervision of the children when they were living with Father and Mother's whereabouts were unknown. The family did not want to cooperate with ongoing case services, so the case was closed. In October of 2015, there were concerns of physical abuse. Father was not willing to cooperate, so they interviewed the children at school. It appeared as if Father hit one of the children. Father denied hitting the child. At that point, the agency involved the police. Father was arrested on an old warrant and he then agreed to a safety plan where he voluntarily placed the children with a family friend. Hokans testified Father was very hard to get ahold of and when she met him in person, Father was very resistant to allowing her access to the home. Hokans talked with Father about drug and alcohol treatment services, as well as parenting education. Father told Hokans he was not interested in those and felt he did not need them. Hokans transferred the case in November of 2015.

{¶14} Dennis Rickett ("Rickett") is a caseworker at RCCSB and was the caseworker for the children. In 2015, there was an accusation of physical abuse of one of the children by Father. The case plan for Father required a substance use assessment, emotional and mental health assessment, and to provide for the basic needs of the children. Rickett offered Father drug and alcohol assessment services and mental health assessment services, but Father refused. Rickett testified Father is not a fan of RCCSB and was very reluctant to do anything RCCSB wanted him to do. Rickett did an unannounced home visit in February of 2016. Rickett described Father as unwilling to work with RCCSB. Father would not sign releases for the children or himself. The

children were placed in foster care on June 8, 2016. During the course of time that Rickett was assigned to this case, he has never known Father to be employed. Father told Rickett the reason he was selling drugs was to get the income to support his children. Rickett testified Father has not completed or been able to prove that he has completed all or any of the case plan objectives. Prior to Father's incarceration, Father attended two out of four scheduled visits with the children. Father sent a few letters and drawings to the children while he was in prison.

{¶15} Rickett testified the children are very dependent on each other. C.B. considers himself part of the foster family. Rickett stated since the children were placed in the temporary custody of RCCSB, they have not returned to the custody of Father. Rickett talked to the children and they told him they like where they are at and they want to stay where they are at. At the time he transferred the case, Rickett had not been successful in locating or identifying any family member that would be willing to take legal custody of the children. Rickett believes permanent custody to RCCSB is in the best interest of the children because the children have adjusted well, consider the placement that they are in as home, they consider the foster family their family, their behavior is better, and they thrive in school. Rickett testified the placement has had a positive impact on them.

{¶16} Rickett attempted to take some drug screens of Father, but Father is not a fan of the test because he believes they can falsely read. Thus, Father declined to take the drug screens. The mental health concern Rickett had with regard to Father is Father's anger. However, Father would not sign any releases for RCCSB to get any sort of

records. When the children were removed from Father's home, there were concerns about their behavior. This behavior has improved in foster care.

{¶17} On cross-examination, Rickett stated he attempted to contact Father every month and he made at least three attempts every month if he did not make contact with Father. Father's attitude remained consistent until he was incarcerated. Rickett met with Father in prison and Father's attitude was better. Father was concerned about the children and asked about them. Rickett did not see drug paraphernalia in Father's home, but Father often acted irrational towards Rickett. Rickett discussed the case plan requirement that he complete a mental health assessment and follow recommendations with Father and Father did not feel he needed to let RCCSB know anything about his mental health issues. After Father was released from prison, Rickett told Father if he could not get the records from the prison, Father should do the assessments locally again and obtain a report. Father did provide Rickett with some certificates. When Father told Rickett he was willing to do what he needed to do to get his children back, Rickett told him to obtain the records from prison or do the assessments at another agency and follow their recommendations.

{¶18} On re-direct, Rickett testified there is nothing in the certificates submitted by Father that provides him with the information he needs to determine whether or not Father has done a mental health assessment or drug and alcohol assessment and there is nothing in there that would satisfy him that Father has successfully completed the case plan objectives.

{¶19} K.S. is the foster father to the children. K.S. testified the children are adjusted into the household and are doing well. When the children first came into the

home, the children were acting out. To address those behaviors, K.S. and his wife were consistent with consequences and rewards. K.S. and his wife have a very close relationship with the children. As far as K.S. knows, the children have had no contact with Father since they have been in his home. However, Father did send a few letters to the children. K.S. did not read them to children, as he believes it is up to the caseworker to do that.

{¶20} Noelle Grate ("Grate") has been the ongoing caseworker for the children since January of 2018. Grate met with Father in prison and every month since his release from prison. Father told Grate when he was released from prison he was going to get an income and resources. It is Father's position that he had completed assessments in prison. However, Grate does not have documentation of any completed assessments. Grate has certificates from classes he completed in prison, but no mental health or drug and alcohol assessment. Grate discussed with Father what RCCSB would need to be satisfied that he successfully completed those case plan objectives. Father told Grate he was trying to get the records. The documents Father provided do not provide Grate with enough information to be able to determine whether Father successfully completed either a mental health assessment or a drug and alcohol assessment.

{¶21} Grate received a phone call from Father the day after his release from prison and Father informed her he did not have a phone number or address. Grate wanted Father to contact the GAL with regards to his request for visitation. Grate had discussions with Father about service providers to help assist him in completing his case plan objectives, but Father did not want to use any service providers RCCSB typically

uses because Father did not want RCCSB to have the information included in his assessment.

{¶22} Grate testified the children are doing very well in the foster home. The children do not ask about Father. They are very bonded to each other. The children are very bonded to the foster parents. Grate believes it is in the children's best interest for permanent custody to be granted to RCCSB because the children are doing well in school, they are bonded with the foster parents, and there is no evidence that either parent has the means to provide for their basic needs.

{¶23} On cross-examination, Grate testified she had Father do one oral drug screen and it came back negative. Grate testified that counseling for anger does not comply with the case plan requirement for a mental health assessment. Grate stated Father told her he was diagnosed with anxiety, depression, narcissism, and low self-esteem, but Grate needs a mental health assessment to determine if these are valid diagnoses.

{¶24} The GAL stated it is her recommendation that permanent custody be granted to RCCSB and this is in the children's best interest. The GAL stated Father has not made any progress on his case plan, he has no job, no place to live, he would not sign a release for the information from the prison, he is a stranger to the children, and they are happy where they are.

{¶25} On August 21, 2018, the magistrate issued a decision with findings of fact and conclusions of law. The magistrate made the following findings of fact: following a substantiated finding of abuse, C.B. and his siblings were placed outside the home prior to the filing of the complaint in this case with a family friend and that placement concluded

when the family friend was no longer willing to care for the children; C.B. has resided outside of his home continuously since September 29, 2016; the presenting problems underlying the finding of dependency as to Father were his lack of participation with the case plan and his incarceration; the case plan required Father to address his substance abuse, address his mental health issues, and provide for C.B.'s basic needs; the caseworker met monthly with Father while he was incarcerated; while in prison Father participated in numerous programs, but none of the programs satisfy the case plan objectives; Father declined services after his release from prison on April 29, 2018 because he did not want RCCSB to have access to any information about him; Father has not engaged in the required services; Father is not employed and is homeless; during the time the children were placed out of Father's care beginning in 2015, Father refused to engage in services, failed to comply with visitation, and his whereabouts were often unknown; in 2016, Father was arrested and was convicted of aggravated possession; prior to the children being removed from Father's care, C.B. and his siblings were routinely left without supervision and there was continued concern about drug use in the home; Father's time since the complaint was filed in this case was spent in the penal institution until April 29, 2018; Father has been in contact with Mother and acknowledges Mother is using heroin and crack cocaine, and is supporting herself by prostituting herself; Father has a number of mental health diagnoses, but is not receiving treatment; C.B. is thriving in foster care and is bonded to the foster family; and both the GAL and caseworker believe it is in the best interest of C.B. for permanent custody to be granted to RCCSB.

{¶26} In her conclusions of law, the magistrate found C.B. has been in the temporary custody of RCCSB for more than twelve months of a consecutive twenty-two

month period as he has been in the temporary custody of RCCSB since December of 2016. The magistrate also found, by clear and convincing evidence, that C.B. cannot be placed with either parent within a reasonable period of time and should not be placed with his parents because Father, despite reasonable case planning efforts in the form of mental health and substance abuse referrals and caseworker counseling, has failed consistently and repeatedly to position himself to assume the responsibilities associated with the full-time care of his child. Further, Father has demonstrated a lack of commitment towards his child by his consistent failure to address his own deficiencies. The magistrate found Father abandoned C.B. because since C.B. was placed in temporary custody of RCCSB, Father has exercised periods of time exceeding ninety days where he has failed to visit or otherwise communicate with the child.

**{¶27}** The magistrate considered the relevant factors in R.C. 2151.414(D) and determined as follows with regard to the best interest of the child: (a) C.B.'s last contact with Father was September 2016 and prior thereto was December 28, 2015, the child has been in his current foster placement for two years and is comfortable and happy in the home and is fully integrated into their home; (b) C.B. has no desire to live anywhere else but with the foster parents; (c) C.B. has been in his current foster placement since September of 2016 and was placed out of the home in October of 2015; and (d) a legally secure placement can best be achieved by the permanent custody to RCCSB.

**{¶28}** The magistrate additionally found: RCCSB has made reasonable efforts to eliminate the continued removal of the child from his home and to return the child home by providing relevant and reasonable case planning and management to assist the biological parents in accessing applicable and appropriate case plan services; it is not in

the child's best interest to return to either of his parents, and it is in the child's best interest that he remain placed out of the home of his parents. The magistrate granted permanent custody of C.B. to RCCSB and terminated Father's parental rights.

{¶29} Father filed objections to the magistrate's decision on August 28, 2018. The trial court issued a judgment entry on January 17, 2019 overruling Father's objections to the magistrate's decision and adopting and approving the magistrate's decision.

{¶30} Father appeals the January 17, 2019 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶31} "I. FATHER-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN THAT HIS TRIAL LAWYER FAILED TO PROCURE INFORMATION THAT MAY HAVE DEMONSTRATED SUBSTANTIAL PLAN COMPLIANCE.

{¶32} "II. THE COURT ERRED IN FINDING THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD TO BE PLACED IN THE PERMANENT CUSTODY OF RCCS.

{¶33} "III. TO THE EXTENT THAT ITS DECISION RELIED ON A FINDING THAT THE CHILD COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE PERIOD OF TIME AND SHOULD NOT BE PLACED WITH A PARENT, THE COURT ERRED IN GRANTING PERMANENT CUSTODY BECAUSE IT ERRED IN FINDING THAT IT COULD NOT PLACE THE CHILD WITH FATHER-APPELLANT WITHIN A REASONABLE PERIOD OF TIME."

*Permanent Custody*

{¶34} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶35} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶36} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶37} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶38} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶39} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.  In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶40} In his first assignment of error, Father contends he received ineffective assistance of counsel because his trial lawyer failed to procure information that may have demonstrated substantial case plan compliance.  Father argues his counsel failed to

obtain the records from the prison about his mental health assessment and these could have demonstrated case plan compliance. We disagree with Father.

{¶41} We have recognized ineffective assistance claims in permanent custody appeals. *In re Utt Children*, 5th Dist. Stark No. 2003CA00196, 2003-Ohio-4576. Our standard of review for an ineffective assistance claim in such a situation applies the rule of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *In re Fell*, 5th Dist. Guernsey No. 05 CA 8, 2005-Ohio-5790.

{¶42} These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). First, we must determine whether counsel's assistance was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* However, "[t]here are countless ways to provide effective assistance in any given case." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 693 N.E.2d 267 (1998).

{¶43} But even if an appellant initially shows that counsel was ineffective, he or she must then satisfy the second prong of the *Strickland* test. In other words, it is well-

established that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶44} Upon review, we find no basis to conclude appellant was prejudiced under *Strickland* by any failure to procure information that may have demonstrated substantial case plan compliance. As this Court has held, the successful completion of a case plan is not dispositive on the issue of reunification. *In the Matter of A.H.*, 5th Dist. Richland No. 18CA96, 2019-Ohio-1509. While it may be in Father's best interest to complete the case plan, this is only one factor for the trial court to consider. *Id.* Where a parent has participated in his case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. The GAL stated Father is not in a position to care for the children. Father is living in a homeless shelter, has no job, no financial stability, and has no concrete plan when his time at the homeless shelter is up. The social workers testified Father consistently resisted help and assistance from RCCSB and was unwilling to work with them. Grate testified Father cannot provide for the basic needs of the children. Further, specifically with regard to the documents at issue, the GAL testified Father would not sign releases for her to obtain verification of these programs and assessments from the prison. Thus, Father failed to take the steps he needed to take to obtain the records from the prison that may have demonstrated case plan compliance.

{¶45} Father's first assignment of error is overruled.

II.

**{¶46}** In his second assignment of error, Father contends the trial court erred in finding it was in the best interest of the children to be placed in the permanent custody of RCCSB.

**{¶47}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶48}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child and (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

{¶49} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. *In re Patterson,* 134 Ohio App.3d 119, 730 N.E.2d 439 (9th Dist. 1999); *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 574 N.E.2d 1055 (1991). The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.* at 111.

{¶50} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994).

{¶51} We find the trial court did not err in finding that granting permanent custody to RCCSB was in the best interest of C.B. The GAL testified Father is not in a position to care for the children, as he is living in a homeless shelter, has no job, and no financial stability. Rickett, Grate, and Hokans' testimony demonstrates that Father consistently resisted help and assistance from RCCSB and was unwilling to work with them on his

case plan requirements. Father confirmed he has no home, no income to provide for the children, and has not completed his case plan. Father testified he sold drugs and ended up in prison when he could not afford to pay the bills. Rickett testified Father told him he sold drugs to get income to support the children. Rickett also testified Father has not completed his case plan. Grate testified Father is not able to provide for the basic needs of the children.

{¶52} The GAL stated the children are doing well and are bonded with the foster family. Rickett testified the children want to stay where they are at. Rickett believes granting permanent custody to RCCSB is in the best interest of the children because the children are adjusted well, the placement has had a positive impact on them, they consider the foster home their home, their behavior is improved, and they are thriving in school. Grate testified the children are doing well and are bonded to the foster family. Grate believes is in the best interest of the children for permanent custody to be granted to RCCSB. The GAL also believes is in the best interest of the children for permanent custody to be granted to RCCSB.

{¶53} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to RCCSB is in the best interest of C.B. is supported by competent and credible evidence. Father's second assignment of error is overruled.

III.

{¶54} In his third assignment of error, Father argues that, to the extent the trial court's decision relied on a finding that the children could not be placed with Father within

a reasonable period of time, the trial court erred in finding it could not place the children with Father within a reasonable period of time.

{¶55} We first note the trial court determined that, pursuant to R.C. 2151.414(B)(1)(d), C.B. had been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni,* 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶56} However, with regards to C.B. and even if we considered Father's argument with regards to C.B., the trial court did not commit error in determining the child cannot be placed with Father at this time or within a reasonable period of time.

{¶57} Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. The relevant portions of R.C. 2151.414(E) are as follows:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *

{¶58} A review of the record supports the trial court's conclusion that C.B. cannot be placed with Father within a reasonable time. Rickett, Grate, and Hokans testified Father has continually and consistently resisted help and assistance from RCCSB and has been unwilling to work with them in completing his case plan, despite their efforts. Throughout most of the case, Father was incarcerated. The GAL and Grate testified Father is not in a position to take care of the children and cannot provide for their basic needs, as he is homeless, has no job, and no financial stability. Further, though Father thinks he might have a job in Cleveland, he was unable to provide details of what the income would be and testified he would likely have to sleep at the business for several months. Father has no concrete plan for when his time at the homeless shelter is up. The concerns that the social workers had at the outset of the case still remain.

{¶59} We find there is competent and credible evidence to support the trial court's finding that C.B. cannot be placed with Father within a reasonable amount of time because the delay in completing the case plan objectives and the failure of Father to reduce the risks posed when the child was first removed are directly attributable to the actions and inactions of Father. Father's third assignment is overruled.

{¶60} Based on the foregoing, we find the trial court did not abuse its discretion in granting permanent custody of C.B. to RCCSB.

{¶61} Father's assignments of error are overruled and the January 17, 2019 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J., concur